FILED
2019 May-20 PM 04:53
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER GREGORY HERRERA, | ) ) ) |
| Petitioner, | ) ) |
| v. | ) Case No. 1:16-cv-08025-RDP ) 1:13-cr-423-RDP-SGC |
| UNITED STATES OF AMERICA, | ) ) |
| Respondent. | ) |

**MEMORANDUM OPINION**

This matter is before the court on Petitioner Christopher Gregory Herrera's Motion to Vacate, Set Aside, or Correct Sentence, filed pursuant to 28 U.S.C. § 2255. (Civil Doc. # 1).[1] The motion has been fully briefed. (Civil Docs. # 5, 6). For the reasons explained below, the motion is due to be denied.

**I.    Background**

In October 2013, the United States Attorney charged Herrera with possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). (Cr. Doc. # 1). Assistant Federal Public Defender Rick Burgess represented Herrera (Cr. Doc. # 3), who ultimately pleaded guilty to the charge (Cr. Docs. # 16, 17). Following his guilty plea, Herrera was sentenced to 97 months of imprisonment. (Cr. Doc. # 31 at 2). That sentence was within the applicable statutory and guideline sentencing range for Herrera's crime. *See* 18 U.S.C. § 2252A(b)(1) (statutory range of zero to ten years of imprisonment); (Cr. Doc. # 45 at 4) (guideline range of 97 to 120 months of imprisonment).

---

[1] Citations to "Civil Doc." refer to the docket sheet for this civil case, 1:16-cv-08025-RDP. Citations to "Cr. Doc." refer to the docket sheet for Herrera's criminal case, 1:13-cr-00423-RDP-SGC-1.

With three exceptions, Herrera waived his right to challenge his conviction and sentence on appeal as well as in any postconviction proceeding, including a motion under § 2255. (Cr. Doc. # 17 at 14-15). Those exceptions reserved Herrera's right to challenge (1) a prison sentence exceeding the statutory maximum sentence for his crime; (2) a prison sentence exceeding the guideline sentencing range determined by the court; and (3) ineffective assistance of counsel. (*Id.*). Only the third exception is at issue in this case.

Notwithstanding this waiver, Herrera chose to appeal his conviction and sentence. (Cr. Doc. # 36). The court appointed Kathy Luker to represent Herrera on appeal. (Cr. Docs. # 40, 41). After explaining to Herrera that he had no arguable issues of merit he could raise on appeal (Civil Doc. # 6 at 27-28), Luker moved to withdraw from further representation of Herrera and filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967). (Cr. Doc. # 47 at 2-3). The Eleventh Circuit granted Luker's motion to withdraw and affirmed Herrera's conviction and sentence. (*Id.*).

In April 2013, Herrera filed the instant motion to vacate his sentence pursuant to 28 U.S.C. § 2255. (Civil Doc. # 1). In his motion, Herrera contends that his guilty plea was obtained in violation of Due Process and that he received ineffective assistance of counsel in the trial court and on appeal. (*Id.* at 4-9).

## II. Legal Standard

A prisoner who files a § 2255 motion is generally entitled to an evidentiary hearing "if he alleges facts that, if true, would entitled him to relief." *Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) (internal quotation marks omitted). But no evidentiary hearing is required if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Moreover, "a district court need not hold a

hearing if the allegations are 'patently frivolous,' 'based upon unsupported generalizations,' or 'affirmatively contradicted by the record.'" *Winthrop-Redin*, 767 F.3d at 1216.

When collaterally attacking a sentence imposed on the basis of his guilty plea, a prisoner bears an especially heavy burden. *Id.* Because dispositions by guilty plea must be "accorded a great measure of finality," "the representations of the defendant, his lawyer, and the prosecutor at a plea hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Id.* (internal quotation marks and brackets omitted). Where the "the record reflects the procedures of plea negotiation and includes a verbatim transcript of the plea colloquy, a petitioner challenging his plea will be entitled to an evidentiary hearing only in the most extraordinary circumstances." *Id.* (internal quotation marks omitted). A prisoner may not successfully challenge his guilty plea through "[t]he subsequent presentation of . . . contentions that in the face of the record are wholly incredible." *Id.* (internal quotation marks omitted). Indeed, such challenges are "subject to summary dismissal" without an evidentiary hearing. *Id.*

### III. Analysis

Herrera makes two constitutional claims in his § 2255 motion. First, he claims his guilty plea was obtained in violation of the Fifth Amendment's Due Process Clause. (Civil Doc. # 1 at 4-5). Second, Herrera claims he received ineffective assistance of counsel in the trial court and on appeal, in violation of his Sixth Amendment right to counsel, *see Strickland v. Washington*, 466 U.S. 668 (1984). Herrera is not entitled to relief on either claim.

Herrera's first claim is foreclosed by his plea agreement, in which he knowingly and voluntarily waived the right to collaterally attack his sentence on Due Process grounds. And his *Strickland* claims, though not waived, are entirely without merit. Herrera's § 2255 motion is

3

therefore due to be denied without an evidentiary hearing.

>    A.   **Herrera Waived His Right to Collaterally Attack His Sentence on Due Process Grounds**

Section 2255 generally allows a federal prisoner to collaterally attack his sentence on grounds that it was imposed in violation of the Constitution or laws of the United States. 28 U.S.C. § 2255(a). However, a prisoner may waive his right to collaterally attack his sentence by plea agreement. *Williams v. United States*, 396 F.3d 1340, 1342 (11th Cir. 2005). Such collateral-attack waivers are valid if the prisoner agrees to the waiver knowingly and voluntarily. *Id.* Here, Herrera's plea agreement contained a collateral-attack waiver by which he waived the right to challenge his conviction or sentence in a § 2255 motion except on three specified grounds: (1) a sentence in excess of the statutory maximum; (2) a sentence in excess of the guideline range; and (3) ineffective assistance of counsel. (Cr. Doc. # 17 at 14-15). Because the court finds that Herrera agreed to this waiver knowingly and voluntarily, it concludes that Herrera may not now collaterally attack his sentence on Due Process grounds.

The record in Herrera's criminal case, including the plea colloquy that the undersigned conducted with Herrera, conclusively establishes that his plea (including the collateral-attack waiver) was knowing and voluntary. Herrera's "conclusory and incredible allegations" to the contrary are insufficient to warrant an evidentiary hearing or § 2255 relief. *Winthrop-Redin*, 767 F.3d at 1216.

On November 22, 2013, Herrera filed a Guilty Plea Advice of Rights Certification with the court. (Cr. Doc. # 16). By signing the Certification, Herrera indicated that he understood (among other things) the following:

- That he would be placed under oath at his plea hearing;

4

- That he would be subject to penalties for perjury if he willfully made a false statement at his plea hearing;

- That he would be required at his plea hearing to inform the court if anything was said or done that he didn't understand;

- That he would be asked if his plea was voluntary, or if anyone coerced or threatened him to plead guilty; and

- That he would be asked if he had time to discuss the content of his plea agreement with his attorney and if he personally understood the content of the plea agreement.

(*Id.* at 1-4). By signing the Certification, Herrera acknowledged that his attorney, Rick Burgess, had "explained to [him] in detail each of the matters set out" in the Certification. (*Id.* at 4).

After Herrera signed the Certification, on January 8, 2014, the court held a plea hearing at which Herrera changed his plea to guilty. (Cr. Doc. # 17). At his plea hearing, Herrera confirmed that he could read; that he and Burgess, had read, completed, and signed the Guilty Plea Advice of Rights Certification; and that he understood all the information in the Certification. (Cr. Doc. # 43 at 6-7). He also confirmed he could understand everything the court was saying and that he was able to communicate with his lawyer. (*Id.* at 7). The court explained that if there was anything Herrera did not fully understand, or if he needed to talk to his lawyer, he should let the court know. (*Id.* at 6).

The court then proceeded to ascertain whether Herrera was knowingly and voluntarily entering into his proposed plea agreement with the United States. (*Id.* at 13-31). The court asked Burgess whether he had a sufficient opportunity to discuss the plea agreement with Herrera before Herrera signed it, and Burgess responded that he had. (*Id.* at 16). The court then had the

following exchange with Herrera:

> THE COURT: Mr. Herrera, a few questions for you. At each place where your signature purports to appear in the Plea Agreement, is that actually your signature that you yourself placed upon the document?
>
> THE DEFENDANT: Yes, sir.
>
> . . . .
>
> THE COURT: And at each place where your initials appear in the Plea Agreement, are those your initials that you yourself placed upon the document?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And did you only sign the agreement and initial each page after you were satisfied that you fully understood the contents of the agreement and its operation and effect on you?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Did you have any questions concerning the meaning of the agreement or its operation or effect on you that your lawyer didn't answer to your satisfaction?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Any such questions that you failed to ask your lawyer for some reason?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: All right. What I want to do is cover with you some specific provisions in the agreement. First, there's a section on Page 3 called "factual basis for plea." It carries over to Page 8 about a third of the way down the page where your signature appears. Do you see the section I'm referring to there?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: What I want to make sure you understand is that by signing the agreement . . . you're admitting that the facts contained in that section are true and correct to the best of your knowledge; you are admitting them and stipulating to their accuracy for purposes of my accepting your guilty plea today and for purposes of sentencing in this case; and finally you're waiving your right to have a jury determine those facts to be true beyond a reasonable doubt. Do you

6

understand all those things?

THE DEFENDANT: Yes.

. . .

THE COURT: All right. And there's another section on Page 14 which indicates that you are waiving your right to appea[l] and file a later lawsuit challenging your conviction and sentence in this case unless one of the exceptions provided for on Pages 14 and 15 come into play. Do you see that section I'm referring to?

THE DEFENDANT: Yes, sir.

THE COURT: And it's entitled "waiver of right to appeal and post-conviction relief." And you signed at the end of that section on Page 15; is that correct?

THE DEFENDANT: Correct, yes, sir.

THE COURT: What I want to make sure you understand again is that this waiver is generally enforceable, and unless one of these exceptions provided for in the agreement comes into play, you will most likely have waived your right to appeal your conviction and sentence in this case and file a later lawsuit challenging your conviction and sentence in this case. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: And your lawyer can give you advice about what he thinks you ought to do in that respect, but he can't make the decision for you nor can anyone else. It's got to be your decision about whether to enter into that waiver with the government. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: And have you concluded it's in your best interest to enter into that waiver with the government?

THE DEFENDANT: Yes, sir.

(*Id.* at 16-19).

The court also had the following exchange with Herrera:

THE COURT: Now, we've gone over the Plea Agreement in some detail. Other than the Plea Agreement, has anyone made any promise or assurance to you to cause you to plead guilty in this case?

7

>THE DEFENDANT: No, sir.
>
>THE COURT: Has anyone threatened you or coerced you in any way to cause you to plead guilty in this case?
>
>THE DEFENDANT: No, sir.
>
>THE COURT: Are you pleading guilty because you're in fact guilty of this charge made in the Information?
>
>THE DEFENDANT: Yes, sir.
>
>THE COURT: All right. Mr. Borton and Mr. Burgess, are both of you satisfied the Defendant fully understands the charge against him, the consequences of him entering a guilty plea and that he's knowingly and voluntarily doing so?
>
>MR. BURGESS: Yes, Your Honor.
>
>MR. BORTON: Yes, Your Honor.

(*Id.* at 26).

Finally, the court confirmed once again with Herrera, his counsel, and counsel for the United States that Herrera was knowingly and voluntarily entering into the plea agreement, that he was truly guilty of the charged offense, and that he would not be able to subsequently change his plea back to "not guilty." (*Id.* at 28-31). The court then found, based on Herrera's live testimony, that "the Defendant is fully competent and capable of entering an informed plea; he is aware of the nature of the charge and the consequences of his plea; and that the plea of guilty is a knowing and voluntary plea supported by an independent basis in fact which contains each of the essential elements of the offense." (*Id.* at 31).

In his § 2255 motion, Herrera claims for the first time (nearly two years after pleading guilty) that his guilty plea was coerced. He makes the conclusory and fantastic allegation that he was coerced into pleading guilty through a conspiracy between the FBI and state authorities:

8

> This Petitioner was COERCED to Plea Guilty under the FALSE pretences [sic] that the F.B.I. had the authority to deprive the Petitioner of his children for life if he did not admit guilt. After FORCED ENTRY of the house, belonging to his father, the Petitioner and others were assaulted by more than ten (10) HEAVILY ARMED MEN. Once BOUND and DETAINED, the Petitioner was informed that the F.B.I. ORDERED State Authorities to take his CHILDREN INTO CUSTODY. Subsequently, ALL the Petitioner's children were systematically taken into custody.

(Civil Doc. # 1 at 5; *see also id.* at 14). As explained below, these conclusory and fantastic allegations provide no basis to question the record evidence demonstrating that Herrera knowingly and voluntarily pleaded guilty to his crime and waived his right to collaterally attack his conviction or sentence. For that reason, Herrera is not entitled to an evidentiary hearing or § 2255 relief.

In *Winthrop-Redin*, the Eleventh Circuit held that a district court may properly reject a prisoner's claim that his guilty plea was coerced without a hearing where the prisoner offers "only implausible and conclusory allegations" in support of his claim. 767 F.3d at 1212. The prisoner in that case, Wilson Daniel Winthrop-Redin, pleaded guilty to a federal drug charge arising from his role as a boat crew member in an international drug-smuggling operation. *Id.* Two years after pleading guilty, he sought relief under § 2255 on the ground that his plea was coerced by death threats from the boat's captain. *Id.* Like Herrera, Winthrop-Redin underwent a lengthy plea colloquy to ensure that he understood the terms of his plea agreement and that his plea was knowing and voluntary. *Id.* at 1213-14. And also like the Herrera, Winthrop-Redin testified under oath that no one had threatened or coerced him into pleading guilty. *Id.*

But when Winthrop-Redin filed his § 2255 motion, he told a very different story. *Id.* at 1214-15. His motion alleged that the captain of the drug-smuggling boat and two other crew members working as informants for the United States government "coerced me to plead guilty

9

under death threats." *Id.* at 1214 (internal quotation marks and brackets omitted). The motion did not provide details about where, when, or why he was coerced to plead guilty; instead, it only claimed "at the highest order of abstraction" that Winthrop-Redin entered his plea out of fear. *Id.* at 1214-15. The district court denied Winthrop-Redin's § 2255 motion without a hearing because it found that the record showed Winthrop-Redin knowingly and voluntarily entered his guilty plea, and the Eleventh Circuit affirmed. *Id.* at 1212, 1215.

The Eleventh Circuit explained that "[t]he district court did not abuse its considerable discretion in declining to hold a § 2255(b) evidentiary hearing because Winthrop-Redin's involuntary plea claim is based only on conclusory and incredible allegations." *Id.* at 1216. The court noted that the record contained powerful evidence showing that Winthrop-Redin's plea was voluntary. *Id.* at 1216-17. Winthrop-Redin (like Herrera) initialed and signed the plea agreement and testified under oath that his plea had not been induced by threats or coercion. *Id.* The court also observed that (again, like Herrera) Winthrop-Redin waited some two years after pleading guilty (and filing a meritless appeal) to say anything to the district court about the alleged threats. *Id.* at 1217. Finally, the court also recognized that Winthrop-Redin "did not put forward 'specific and detailed factual assertions'" in support of his involuntary plea claim. *Id.* Under these circumstances, the court held, Winthrop-Redin could not overcome the "strong presumption of verity" that attached to his prior sworn statements made during his plea colloquy. *Id.* The court therefore affirmed the denial of Winthrop-Redin's § 2255 motion without an evidentiary hearing. *Id.* at 1218 ("The district court was not required to allow a fishing-expedition based only on Winthrop-Redin's incredible allegations.").

As in *Winthrop-Redin*, Herrera's allegations that he was coerced into pleading guilty and waiving his right to collaterally attack his sentence are stale, conclusory, incredible, and flatly

10

contradicted by the record evidence and the undersigned's own credibility determination based on Herrera's conduct and demeanor at his plea hearing. Herrera did not make any claim that his plea agreement was coerced in correspondence with his appellate counsel shortly after pleading guilty. (Civil Doc. # 6 at 19-29). Instead, he waited nearly two years after pleading guilty to assert that his plea agreement and collateral-attack waiver were coerced. Moreover, Herrera's allegations are even more conclusory and implausible than the prisoner's allegations in *Winthrop-Redin*. Herrera would have the court believe that the FBI plotted with state authorities to take his children away from him in an effort to coerce him into pleading guilty and agreeing to a collateral-attack waiver, a plot which culminated in ten armed men assaulting Herrera and others before taking his children into custody. (Civil Doc. # 1 at 5). These conclusory and fantastic allegations do nothing to cast doubt upon the specific, detailed factual basis for Herrera's guilty plea that Herrera admitted to as part of his plea agreement. (Cr. Doc. # 17 at 3-8). As in *Winthrop-Redin*, conclusory, incredible allegations of this sort cannot overcome Herrera's prior conduct and sworn statements, all of which show that he knowingly and voluntarily pleaded guilty and waived his right to collaterally attack his sentence.

Because the court finds that Herrera knowingly and voluntarily waived his right to collaterally attack his sentence on Due Process grounds, Ground One of his § 2255 motion (Civil Doc. # 1 at 4-6) is due to be denied.

B.  **Herrera Has Failed to Show He Received Ineffective Assistance of Counsel**

Herrera next argues he received ineffective assistance of counsel in the trial court and on appeal, in violation of his Sixth Amendment right to counsel, *see Strickland v. Washington*, 466 U.S. 668 (1984). Though Herrera's collateral-attack waiver permits him to raise ineffective assistance claims in a § 2255 motion (Cr. Doc. # 17 at 14-15), his claims are entirely without

merit.

An ineffective assistance of counsel claim under the Sixth Amendment has two elements. First, a defendant "must show that counsel's performance was deficient." *Strickland*, 466 U.S. 668, 687 (1984). Second, he must show that counsel's deficient performance prejudiced his defense. *Id.*

To establish deficient performance, a defendant "must show that counsel's representation fell below an objective standard of reasonableness." *Harrington*, 562 U.S. at 104 (internal quotation marks omitted). Reasonableness must be determined by reference to "prevailing professional norms." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc) (quoting *Strickland*, 466 U.S. at 688). Reviewing courts "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington*, 562 U.S. at 104. The burden is on the defendant to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* (quoting *Strickland*, 466 U.S. at 687).

To establish prejudice, a defendant "must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland*, 466 U.S. at 694). Where a defendant "challenges his guilty plea based on his counsel's alleged deficient performance, he can show prejudice only if 'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Winthrop-Redin*, 767 F.3d at 1219 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

The court separately considers whether Herrera has shown that either his trial or appellate

counsel was constitutionally ineffective.

1. **Trial Counsel**

Herrera was represented in the trial court by Rick Burgess. Herrera alleges that Burgess performed deficiently by: (1) failing to adequately investigate his case, including failing to request the appointment of experts and investigators prior to advising Herrera to plead guilty; (2) failing to inform Herrera of the essential elements of the charged offense; and (3) failing to inform Herrera that signing his plea agreement would result in waiver of his right to appeal or collaterally attack his sentence. (Civil Doc. # 1 at 7-9). The first allegation provides no basis for an evidentiary hearing or § 2255 relief because Herrera has not alleged how Burgess's alleged failure to investigate prejudiced him. The second and third allegations likewise provide no basis for relief because they are conclusory and are directly contradicted by the record.

Had Burgess further investigated his case, Herrera claims he would have discovered that the FBI has been a longtime coconspirator in the child-pornography trade. (*Id.* at 7-8). Herrera also asserts Burgess "would have made pertinent discoveries concerning the essential elements of the charged offenses as they relate to fact and law." (*Id.* at 8). These discoveries, Herrera asserts, would have caused Burgess to give him different advice and resulted in Herrera choosing to proceed to trial instead of pleading guilty. (*Id.* at 7-8).

Again, Herrera's allegations are speculative, conclusory, and fantastical. He does not allege how Burgess's purported discovery of the FBI's involvement in the child-pornography trade would have caused him to change his advice to Herrera about whether Herrera should plead guilty to knowingly possessing child pornography. And he does not specify what "pertinent discoveries" Burgess would have made concerning the charged offense, or how those discoveries would have changed Burgess's advice to Herrera. Where a prisoner does not specifically allege

how his counsel's supposedly deficient performance prejudiced him, he is not entitled to an evidentiary hearing or § 2255 relief on a *Strickland* claim. *Hill*, 474 U.S. at 60; *Winthrop-Redin*, 767 F.3d at 1219-20.

Herrera's second and third allegations -- that Burgess failed to inform him (1) of the essential elements of the charged offense and (2) that his plea agreement waived his right to appeal or collaterally attack his sentence -- are flatly contradicted by the record. In his Guilty Plea Advice of Rights Certification, Herrera certified that he understood the following questions would be asked of him at his plea hearing:

- "I will be asked if I had enough time to discuss the case with my attorney."
- "I will be asked if my attorney has explained the elements of the charge(s) against me."
- "I, Christopher G. Herrera, hereby acknowledge that my attorney, [Rick Burgess], has explained to me, in detail each of the matters set out above."
- "I also certify that I am satisfied with the representation my attorney has provided me, and that I have no complaints about any aspect of his or her representation of me."

(Cr. Doc. # 16 at 3-4). Herrera's counsel, Rick Burgess, also made the following certifications:

- "I have discussed with the defendant, in detail, each of the matters set out above;"
- "I have observed the defendant today, before the plea proceeding, and I am aware of no reason why the defendant is not competent to enter a guilty plea(s) at this time;"
- "I am aware of no reason, at this time, why the defendant's guilty plea(s) should not be accepted by the court."

(*Id.* at 5).

After Herrera signed the Certification, at his plea hearing, the court had the following

exchange with Herrera:

> THE COURT: Mr. Burgess, have you had adequate time to investigate the charge against your client, to consider any possible defense he may have to the charge, and to consult with him concerning each of those matters?
>
> [MR. BURGESS]: Yes, Your Honor.
>
> THE COURT: And, Mr. Herrera, have you had adequate time to accomplish those tasks with your lawyer?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And are you fully satisfied with the representation and advice that you have received from your attorney, Mr. Burgess?
>
> THE DEFENDANT: Yes, sir.
>
> . . . .
>
> THE COURT: Now, in this case, Count 1 of the Information charges you with the offense of violating 18 United States Code Section 2252A(a)(5)(B), which makes it a felony offense to possess child pornography. Before you could be found guilty of that charge, the government would be required to prove each and every element of the charge made against you to the jury beyond a reasonable doubt. And in order to accomplish that, the government would have to prove the following facts to the jury beyond a reasonable doubt: First, that you knowingly possessed an item or items of child pornography; second, that the items of child pornography that you possessed had been transported, shipped and mailed in interstate or foreign commerce, including by computer; and finally that when you possessed the item, child pornography, you believed the item contained child pornography. First, do I need to define any of these terms for you?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Do I need to give you any further explanation of the charge?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: ***Is what I've just told you about what the government would have to prove consistent with what Mr. Burgess explained to you before you came into the courtroom today?***
>
> THE DEFENDANT: ***Yes, sir.***

15

> THE COURT: *Do you understand the charge made against you in the Information based upon my instructions to you?*
> THE DEFENDANT: *Yes, sir.*

(Cr. Doc. # 43 at 8, 11-12) (emphasis added).

Thus, the record conclusively establishes that Burgess informed Herrera of the essential elements of the charged offense. Herrera's conclusory allegation to the contrary cannot overcome the presumption of verity that attaches to his sworn statements at and prior to his plea hearing. *See Winthrop-Redin*, 767 F.3d at 1216-17. Additionally, the testimony referenced above (in Section III.A of this opinion) conclusively establishes that Herrera understood the contents of his plea agreement, including the collateral-attack waiver, that he had discussed the contents of the agreement with his attorney to his satisfaction, and that Herrera knowingly and voluntarily agreed to the collateral-attack waiver because he believed it to be in his best interest. (Cr. Docs. # 16 at 1-4; 17 at 22-23; 43 at 13-31). His conclusory allegation that Burgess failed to discuss and explain the collateral-attack waiver to him is refuted by the record and therefore provides no basis for relief. And in any event, Herrera could not show prejudice from any failure by counsel to explain the collateral-attack waiver to him because the court explained the collateral attack waiver to Herrera at his plea hearing and ensured that Herrera understood its terms and was knowingly and voluntarily agreeing to the waiver because he believed it to be in his best interest. (Cr. Doc. # 43 at 18-20).

For all these reasons, Herrera's claim that he received ineffective assistance of counsel in the trial court is due to be denied.

### 2. Appellate Counsel

Herrera was represented on direct appeal by Kathy Luker. Herrera alleges that Luker performed deficiently by filing an *Anders* brief and moving to withdraw instead of arguing for

the reversal of Herrera's conviction and sentence. (Civil Doc. # 1 at 9). Because there are no arguable issues of merit Luker could have raised on appeal, her decision to file an *Anders* brief was not deficient. And because Herrera has failed to specifically allege what issues Luker could have raised on appeal that would have created a reasonable probability of appellate relief, he has also failed to show prejudice. Herrera's claim that he received ineffective assistance of counsel on direct appeal is therefore due to be denied.

**IV. Conclusion**

For the reasons explained above, Herrera is not entitled to either an evidentiary hearing or postconviction relief on his § 2255 motion. The motion is accordingly due to be denied. A separate order consistent with this memorandum opinion will be entered.

**DONE** and **ORDERED** this May 20, 2019.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE